Salgado v North Shore Univ. Hosp. (2018 NY Slip Op 08967)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Salgado v North Shore Univ. Hosp.

2018 NY Slip Op 08967

Decided on December 26, 2018

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 26, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department
JOHN M. LEVENTHAL, J.P.
CHERYL E. CHAMBERS
LEONARD B. AUSTIN
JEFFREY A. COHEN, JJ.


2016-04286
(Index No. 29467/09)

[*1]Francisco Salgado, etc., et al., appellants,
vNorth Shore University Hospital, et al., respondents, et al., defendant.

Jack Angelou, Mineola, NY, for appellants.
Heidell, Pittoni, Murphy & Bach, LLP, White Plains, NY (Daniel S. Ratner and Daryl Paxon of counsel), for respondents.

DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiffs appeal from an order of the Supreme Court, Westchester County (Charles D. Wood, J.), dated February 24, 2016. The order granted the motion of the defendants North Shore University Hospital and Peter Reiser for summary judgment dismissing the complaint insofar as asserted against them.
ORDERED that the order is reversed, on the law, with costs, and the motion of the defendants North Shore University Hospital and Peter Reiser for summary judgment dismissing the complaint insofar as asserted against them is denied.
The plaintiff Francisco Salgado was admitted to the defendant North Shore University Hospital (hereinafter the hospital) due to symptoms of a stroke and subsequently fell out of his hospital bed. Salgado, and his wife suing derivatively, commenced this action, inter alia, to recover damages for medical malpractice against, among others, the hospital and the defendant Peter Reiser, a physician who treated Salgado at the hospital (hereinafter together the defendants). The defendants moved for summary judgment dismissing the complaint insofar as asserted against them. The Supreme Court granted the motion, and the plaintiffs appeal.
"In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (Stukas v Streiter, 83 AD3d 18, 23; see Donnelly v Parikh, 150 AD3d 820, 822; Leavy v Merriam, 133 AD3d 636, 637; Lesniak v Stockholm Obstetrics & Gynecological Servs., P.C., 132 AD3d 959, 960). Thus, in moving for summary judgment, a physician defendant must establish, prima facie, "either that there was no departure or that any departure was not a proximate cause of the plaintiff's injuries" (Lesniak v Stockholm Obstetrics & Gynecological Servs., P.C., 132 AD3d at 960; see Stukas v Streiter, 83 AD3d at 23). Once this showing has been made, the burden shifts to the plaintiff to rebut the defendant's prima facie showing with evidentiary facts or materials "so as to demonstrate the existence of a triable issue of fact" (Salvia v St. Catherine of Sienna Med. Ctr., 84 AD3d 1053, 1054; see Alvarez v Prospect Hosp., 68 NY2d 320, 324; Stukas v Streiter, 83 AD3d at 30).
Here, the defendants met their prima facie burden by submitting, inter alia, the affirmations of two experts, who opined that there was no departure from accepted community standards of practice and that no alleged departure was a proximate cause of Salgado's injuries (see Stukas v Streiter, 83 AD3d at 30). However, in opposition, the plaintiffs raised triable issues of fact as to whether the defendants departed from accepted standards of practice by failing to prevent Salgado from falling out of bed and whether his injuries were exacerbated by his fall. More particularly, the plaintiffs submitted the affirmation of an expert who opined that the monitoring and precautions against falls implemented by the hospital in its Medical Intensive Care Unit departed from accepted standards of practice because, given the medical condition noted in Salgado's chart, i.e., "calm" and "lethargic" with no right hand grip or right arm or leg movement early the same day, Salgado's fall could not have occurred unless restraints were improperly applied. Furthermore, with respect to causation, the plaintiffs' expert opined that the increase in the size of Salgado's intercranial hemorrhage from the morning of the fall, accompanied by the new onset of midline shift, was too extensive and rapid in onset to be due solely to the natural progression of Salgado's original hemorrhage.
Accordingly, the Supreme Court should have denied the defendants' motion for summary judgment dismissing the complaint insofar as asserted against them (see Alvarez v Prospect Hosp., 68 NY2d at 324-325; Stukas v Streiter, 83 AD3d at 25-26).
LEVENTHAL, J.P., CHAMBERS, AUSTIN and COHEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court